# Exhibit IL-2

## DECLARATION OF DR. TONY SANDERS

I, Dr. Tony Sanders, declare as follows:

1.      I am a resident of Illinois. I am over the age of 18 and have personal knowledge of all the facts stated herein. If called as a witness, I could and would testify competently to the matters set forth below.

2.      I am the State Superintendent of Education of the Illinois State Board of Education (ISBE), a position I have held since February 2023. Prior to holding this position, I served as the superintendent of School District U-46, the second-largest school district in Illinois, for nearly a decade.

3.      I have been employed by the Illinois State Board of Education, our State Education Agency (SEA), as the State Superintendent of Education since February 2023. I am responsible for setting educational policies and guidelines for public schools, preschool through grade 12, including vocational education and transition programs for students who are served until their 22nd birthday; analyzing the aims, needs, and requirements of education; and making legislative recommendations to the Illinois General Assembly and Governor. Prior to holding this position, I served as the superintendent of School District U-46, the second largest school district in Illinois, for nearly a decade.

4.      I submit this declaration in support of Plaintiffs' Motion for Summary Judgment. As State Superintendent of Education, I have personal knowledge of the matters set forth below; with respect to the matters for which I do not have personal knowledge, I have reviewed information gathered from ISBE's records by others within the organization.

5.      ISBE supports approximately 862 Local Education Agencies ("LEAs") serving more than 1.8 million public-school students in pre-kindergarten through twelfth grade. Certain

1

federally funded programs also benefit Illinois' non-public schools either through direct funding or a requirement that services supported by the program be provided to nonpublic schools and students.

## The Policy

6.     I understand that earlier this year the Department of Homeland Security issued a policy requiring employer payment of a $100,000 supplement fee in conjunction with any new petition for an H-1B visa (the "Policy").

7.     As described below, it is my understanding that the Policy will inflict significant harm upon Illinois' efforts to provide a high-quality education to all children.

8.     On September 19, 2025, President Trump issued a Proclamation, Restriction on Entry of Certain Nonimmigrant Workers ("Proclamation"), that restricts the entry of certain applicants seeking to enter the United States with H-1B visas "except for those aliens whose petitions are accompanied by a payment of $100,000." I understand that this Proclamation provided the basis for the promulgation and implementation of the Policy.

## Teacher Shortage in Illinois and Role of H-1B Workers

9.     Illinois faces a significant teacher shortage crisis, with the most common shortages in English Language Arts, Math, Science, Physical Education, and World Languages.

10.     According to the Educator Shortage Report and Unfilled Positions data collection,[1] 3,864 teaching positions were unfilled for the 2024-2025 school year. This total number includes classroom teachers and special education teachers.

11.     The H-1B program has been an important tool to fill vacancies where hiring a domestic worker has been challenging.  H-1B workers are utilized in various districts across the

---

[1] https://www.isbe.net/Documents/IARSS-2024-2025-Ed-Shortage-Report.pdf

state including rural, low-income, and vulnerable communities. Often, these districts struggle to find qualified staff and therefore rely on H-1B workers to fill open positions. H-1B workers are highly qualified and specialized teachers in subjects such as Special Education, Bilingual/ESL education, Math and Science, and other content areas.

### Impact on State LEAs

12.     The $100,000 fee for new H-1B petitions will cause irreparable harm and jeopardize programs and services that support millions of children and youths across the State.

13.     If the Policy remains in place, State LEAs will not be able to pay $100,000 towards each H-1B visa, which means that the H-1B worker program no longer is a viable means of filling hard-to-fill positions. As H-1B visas are issued when employers are unable to fill positions with American workers, H-1B teachers often fill teacher shortage areas. Illinois' hardest to fill positions include the specializations of Special Education, Bilingual Education, Math, Science, and other content areas. This will result in positions continuing to be unfilled, students not receiving required services (if the H-1B teachers are specialists such as Special Education or Bilingual/ESL teachers), and course offerings being cut.

14.     Students do not make appropriate learning gains without licensed, qualified educators, including those with H-1B visas. Under IDEA (for Special Education Students) and *Lau v. Nichols*, 414 U.S. 563 (1974), and *Castañeda v. Pickard*, 648 F.2d 989 (5th Cir. 1981) (for English Learners), LEAs and SEAs must provide meaningful access to curriculum, including the free appropriate education to students with disabilities. H-1B teachers meet this need for schools who are unable to fill positions with American teachers.

15.     Moreover, the Policy has already led to lack of clarity among districts who utilize the H-1B program. The Illinois State Board of Education has received calls asking for guidance, which ISBE is unable to provide.

16.     Paying the $100,000 per H-1B worker also reduces the amount of district funds available to serve students directly.

17.     Finally, the Policy has led to additional fears and concerns by districts not only about the H-1B program, but also about other visa programs, specifically the J-1 Teacher Exchange program. Districts, teachers, and their J-2 dependent family members expressed concern about their status and whether they will need to pay additional fees. There are further concerns as to whether that J-1 program will also be impacted by future fees. Subsequent to the administration's actions, ISBE has seen a reduction in the number of highly qualified teachers willing and interested in coming to Illinois through the J-1 visa program that can be directly tied to confusion around information available about the H-1B fees and other rapidly shifting immigration policies.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 28, 2026, at Springfield, Illinois.

Dr. Tony Sanders

4