**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| STATE OF CALIFORNIA, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> MARKWAYNE MULLIN, *in his official capacity as Secretary of Homeland Security*, *et al.*, <br><br> Defendants. | Civil Action No. 1:25-cv-13829-LTS |

**<u>DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

INTRODUCTION..................................................................................................................1

I.     **Plaintiffs' Claims are Not Justiciable**.............................................................1

II.    **Plaintiffs' APA Cause of Action Fails.** ..........................................................2

III.   **Plaintiffs' *Ultra Vires* Claim Fails**..................................................................4

IV.   **The Proclamation Does Not Conflict with the INA** .......................................4

V.    **The Payment is Not an Unconstitutional Tax**.................................................6

VI.   **Plaintiffs' Other APA Claims Fail**..................................................................9

VII.  **Plaintiffs Have Not Met the Requirements for Relief**...................................10

CONCLUSION ...................................................................................................................10

# TABLE OF AUTHORITIES

## CASE LAW

*Abourezk v. Reagan*,
    785 F.2d 1043 (D.C. Cir. 1986) ............................................................................... 8

*Biden v. Nebraska*,
    600 U.S. 477 (2023) .................................................................................................. 8

*Bradford v. United States DOL*,
    101 F.4th 707 (10th Cir. 2024) ....................................................................... 3, 9, 10

*Chamber of Com. v. Reich*,
    74 F.3d 1322 (D.C. Cir. 1996) .................................................................................. 3

*Chamber of Com. of United States v. United States Dep't of Homeland Sec.*,
    2025 U.S. Dist. LEXIS 265244  (D.D.C. Dec. 23, 2025) .................................... 6, 10

*Chamber of Com. of United States v. United States Dep't of Homeland Sec.*,
    2025 WL 3719234 (D.D.C. Dec. 23, 2025) ....................................................... 5, 9, 10

*Comm'n v. Texas*,
    605 U.S. 665 (2025) .................................................................................................. 4

*Dalton v. Specter*,
    511 U.S. 462 (1994) .................................................................................................. 4

*Dep't of State v. Muñoz*,
    144 S. Ct. 1812 (2024) .............................................................................................. 1

*Doe #1 v. Trump*,
    984 F.3d 848 (9th Cir. 2020) .................................................................................... 9

*FCC v. Consumers' Rsch.*,
    606 U.S. 656 (2025) .................................................................................................. 7

*Federal Energy Admin. v. Algonquin SNG, Inc.*,
    426 U.S. 548 (1976) .................................................................................................. 7

*Fiallo v. Bell*,
    430 U.S. 787 (1977) .................................................................................................. 2

*Glob. Health Council v. Trump*,
    153 F.4th 1 (D.C. Cir. 2025) ..................................................................................... 4

*Int'l Bridge Co. v. Gov't of Canada*,
    189 F. Supp. 3d 85 (D.D.C. 2016) ............................................................................ 3

*Iraq v. Beaty*,
    556 U.S. 848 (2009) ...................................................................................................... 7

*Learning Resources, Inc. v. Trump*,
    146 S. Ct. 628 (2026) .............................................................................................. 7, 8

*Lemon v. Int'l Union of Operating Eng'rs, Loc. No. 139, AFL-CIO*,
    216 F.3d 577 (7th Cir. 2000) .................................................................................. 10

*Make The Rd. N.Y. v. Wolf*,
    962 F.3d 612 (D.C. Cir. 2020) .................................................................................. 9

*Merrion v. Jicarilla Apache Tribe*,
    455 U.S. 130 (1982) ...................................................................................................... 7

*Nebraska v. Su*,
    121 F.4th 1 (9th Cir. 2024) ........................................................................................ 2

*New York v. Trump*,
    133 F.4th 51 (1st Cir. 2025) ..................................................................................... 2

*Norton v. S. Utah Wilderness All.*,
    542 U.S. 55 (2004) ...................................................................................................... 4

*Orr v. Trump*,
    778 F. Supp. 3d 394 (D. Mass. 2025) ..................................................................... 3

*Pacito v. Trump*,
    2026 WL 620449 (9th Cir. Mar. 5, 2026) .............................................................. 5

*Pietersen v. U.S. Dep't of State*,
    138 F.4th 552 (D.C. Cir. 2025) ................................................................................ 1

*Sherley v. Sebelius*,
    689 F.3d 776 (D.C. Cir. 2012) .................................................................................. 3

*Smith v. Turner*,
    48 U.S. 283 (1849) ...................................................................................................... 6

*Sustainability Inst. v. Trump*,
    165 F.4th 817 (4th Cir. 2026) .................................................................................. 4

iii

*Target Sportswear, Inc. v. United States*,
    70 F.3d 604 (Fed. Cir. 1995).........................................................................6

*Tate v. Pompeo*,
    513 F. Supp. 3d 132 (D.D.C. 2021) ...........................................................3

*Teles de Menezes v. Rubio*,
    156 F.4th 1 (1st Cir. 2025)..........................................................................2

*Trump v. Hawaii*,
    585 U.S. 667 (2018)..........................................................................*passim*

*Trump v. Orr*,
    146 S. Ct. 44 (2025) ............................................................................. 3, 10

*Tulare County v. Bush*,
    185 F. Supp. 2d 18 (D.D.C. 2001) .............................................................3

*U.S. ex rel. Knauff v. Shaughnessy*,
    338 U.S. 537 (1950)........................................................................ 2, 4, 6, 10

*United States v. Rahimi*,
    602 U.S. 680 (2024)....................................................................................9

*United States v. Yoshida Int'l, Inc.*,
    526 F. 2d 560 (CCPA 1975) .......................................................................8

## STATUTES

8 U.S.C. § 1182(f)............................................................................... 1, 7, 8

8 U.S.C. § 1184(c)(12)..............................................................................6

8 U.S.C. § 1184(i)......................................................................................9

8 U.S.C. § 1185(a) ...................................................................................1,

8 U.S.C. § 1356(e)(3)................................................................................5

## PRESIDENTIAL PROCLAMATION

Proclamation No. 10973, 90 Fed. Reg. 46,027 (Sep. 24, 2025) .....................................1

**FEDERAL REGISTER**

90 Fed. Reg. at 46,028-29 .................................................................................................. 3

**MISCELLANEOUS**

U.S. Citizendship and Immigration Services, *FY 2027 H-1B Initial Registration Selection Process Completed*, (Mar. 31, 2026), Available at https://www.uscis.gov/newsroom/alerts/fy-2027-h-1b-initial-registration-selection-process-completed (last visited Apr. 13, 2026) ........... 3

**INTRODUCTION**

Plaintiffs' challenge to the President's Proclamation 10973, 90 Fed. Reg. 46,027 (Sep. 24, 2025) (the "Proclamation"), imposing a payment on certain H-1B visa petitions rests on an unduly narrow concept of executive authority, a mischaracterization of the nature of the challenged action, and an overextension of judicial review doctrines. Contrary to Plaintiffs' assertions, the policy at issue falls squarely within the broad authority delegated by Congress under 8 U.S.C. §§ 1182(f) and 1185(a). Presidents have exercised wide latitude under these provisions to impose entry restrictions tailored to evolving circumstances. This Proclamation is no different. Plaintiffs' arguments improperly attempt to recast a lawful entry restriction as an unconstitutional tax, minimize the scope of congressionally delegated authority, and invite judicial intrusion into domains constitutionally committed to the political branches. Their claims should be rejected.

## I.    Plaintiffs' Claims are Not Justiciable.

The Proclamation is not reviewable by courts. The Supreme Court has made clear that, under the doctrine of consular nonreviewability, "[t]he admission and exclusion of foreign nationals is a fundamental sovereign attribute" that is "largely immune from judicial control." *Dep't of State v. Muñoz*, 602 U.S. 899, 907 (2024) (quotations omitted). Because the Proclamation governs the admission and entry of aliens, it falls squarely within that rule.

What Supreme Court precedent makes clear is that consular nonreviewability rests on two premises that do not depend on whether the challenge targets an individual decision or a policy. First, aliens have "no 'claim of right' to enter the United States." *Hawaii*, 585 U.S. at 682 (quoting *U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542–543 (1950)). Second, separation of powers principles establish that questions of admissibility are "wholly outside the power of this Court to control." *Fiallo v. Bell*, 430 U.S. 787, 796 (1977). It would invert this structure to bar review of

1

consular officers' decisions while allowing review of the President's determination to restrict or suspend entry on national-interest grounds.

Plaintiffs assert that only individual visa decisions are unreviewable, while broader entry policies remain subject to judicial review. Doc. No. 99 at 2 ("Resp. Br."). That is incorrect. Plaintiffs rely (at 2) on *Pietersen v. U.S. Dep't of State*, 138 F.4th 552, 544, 560 (D.C. Cir. 2025), an out-of-circuit case challenging a "reason to believe" standard set by the State Department in its Foreign Affairs Manual. Even if *Pieterson* could identify "express[]" limits in the INA on the State Department's ability to set its "reason to believe" standard, there is no such limit on the President's authority to "impose on the entry of aliens any restrictions he may deem to be appropriate." 8 U.S.C. § 1182(f). Plaintiffs also cite (at 2) *Teles de Menezes v. Rubio*, 156 F.4th 1, 9–10 (1st Cir. 2025), which simply held that the challenge at issue was not a visa denial (again not a proclamation on admission) and declined to reach the question at issue here.

## II.   Plaintiffs' APA Cause of Action Fails.

Plaintiffs lack an APA cause of action for multiple reasons. At bottom, all of Plaintiffs' arguments are challenging the payment set by the Proclamation itself. Their attempts to invent separate agency actions from short guidance documents falters. Even so, those documents would narrow the Proclamation and thus not injure Plaintiffs. This cannot justify halting the implementation of the Proclamation itself.

Plaintiffs insist (at 3) that a footnote in the non-binding stay denial of *N.Y. v. Trump*, 133 F.4th 51, 70 n.17 (1st Cir. 2025) is controlling. But that case, in denying an interim stay, did not address a situation where the agencies were merely implementing a Presidential proclamation. Plaintiffs' reliance on the out-of-circuit *Neb. v. Su*, 121 F.4th 1, 16 (9th Cir. 2024), is misplaced because there, the agency engaged in notice and comment rulemaking, the executive order gave the agency significant discretion, and yet the agency refused to justify increasing the minimum

wage. The agencies here lacked such discretion. The same goes for *Chamber of Com. v. Reich*, 74 F.3d 1322, 1327 (D.C. Cir. 1996), and as Plaintiffs acknowledge, it did not address the APA. Resp. Br.3. Plaintiffs' reliance on *Orr v. Trump*, 778 F. Supp. 3d 394, 419 (D. Mass. 2025) is surprising, given that the Supreme Court stayed that decision because the agency could not act "arbitrarily and capriciously by declining to depart from Presidential rules that Congress expressly required it to follow." *Trump v. Orr*, 146 S. Ct. 44, 46 (2025). The same is true here. This follows a line of cases that Plaintiffs have no response to. *See Bradford v. U.S. DOL*, 101 F.4th 707, 731 (10th Cir. 2024); *Sherley v. Sebelius*, 689 F.3d 776, 784-85 (D.C. Cir. 2012).

When agencies have discretion in implementing a policy, those discretionary decisions can be challenged. *See Tate v. Pompeo*, 513 F. Supp. 3d 132, 142–43 (D.D.C. 2021). But where the action is "the exercise of discretionary authority committed to the President," it is "presidential in nature." *Det. Int'l Bridge Co. v. Gov't of Canada*, 189 F. Supp. 3d 85, 101 (D.D.C. 2016). The guidance at issue here did not expand the Proclamation; rather, they merely implemented it. *See Tulare Cty. v. Bush*, 185 F. Supp. 2d 18 (D.D.C. 2001). That is not reviewable.

Plaintiffs' reliance (at 4) on discretionary waivers is irrelevant: Plaintiffs neither challenge any denial nor allege they sought one. Likewise, directing DHS and DOS to "take all necessary and appropriate action" simply tracks the Proclamation and is the nature of implementation. Plaintiffs also claim the guidance narrowed the Proclamation, but the non-application to certain visa holders reflects the limited scope of the Proclamation. *See* 90 Fed. Reg. at 46,028-29 § 3 (restriction on entry "shall apply only to aliens who enter or attempt to enter the United States after the effective date"). Moreover, even if that was an agency action, it in no way injures Plaintiffs.

Plaintiffs simply assert (at 5) a supposed "decisionmaking process … [to] levy a $100,000 tax on employers of H-1B petitioners." That demonstrates that Plaintiffs are really challenging the

Proclamation, as the agencies made no decision to impose the payment. And the very nature of § 1182(f) and the Proclamation make it clear that any action is committed to agency discretion. *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004).

**III.        Plaintiffs' *Ultra Vires* Claim Fails.**

Plaintiffs' fallback to non-statutory *ultra vires* review fares no better. Plaintiffs do not grapple with (at 7) *Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 666 (2025), which requires a "specific prohibition in a statute" for an *ultra vires* claim. They simply assert that the constitutional limits on taxes suffice. Yet they ignore that parties cannot reframe statutory claims as separation of powers challenges. *See Glob. Health Council v. Trump*, 153 F.4th 1, 14-15 (D.C. Cir. 2025); *Sustainability Inst. v. Trump*, 165 F.4th 817, 831 (4th Cir. 2026).

Where Congress has delegated authority as it did in §§ 1182(f) and 1185(a), the President and his designees act within the law. The *ultra vires* doctrine does not authorize courts to reweigh the scope of this delegated discretion on policy grounds. *Dalton v. Specter*, 511 U.S. 462, 474, 486 (1994). Plaintiffs' assertion that "*Dalton* concerned the opposite of the situation at hand" (at 7) is incorrect. At bottom, Plaintiffs are challenging the $100,000 payment. That is all that injures them and stopping its application is the relief they seek. As in *Dalton*, § 1182(f) is such a discretionary statute because it "commits the decision to the discretion of the President." 511 U.S. at 474. It "exudes deference" to the President "in every clause," including "on what conditions ('any restrictions he may deem to be appropriate')." *Trump v. Hawaii*, 585 U.S. 667, 684 (2018).

**IV.    The Proclamation Does Not Conflict with the INA.**

Plaintiffs do not dispute that the Proclamation may supplement the INA's requirements. *Hawaii*, 585 U.S. at 684. Instead, Plaintiffs strangely argue (at 8-9) that only Congress can regulate aliens. In doing so they misread *Knauff*, which rejected a delegation challenge because when regulating admissibility Congress was "implementing an inherent executive power." Such

4

authority "stems not alone from legislative power but is inherent in the executive power." *Knauff*, 338 U.S. at 542. In any event, Defendants never argued Congress has no role. Rather, Congress expressly delegated "sweeping" authority in § 1182(f).

Plaintiffs argue (at 9-10) that the Proclamation effectively ended the H-1B program by increasing costs and requirements to reduce petitions. This exact argument was just rejected in *Pacito v. Trump*, 2026 WL 620449 (9th Cir. Mar. 5, 2026), which Plaintiffs confine to a breezy footnote. There, the plaintiffs argued, and the district court agreed, that the proclamation eviscerated Congress's reticulated scheme under the Refugee Act by indefinitely suspending entry *and processing* for all refugees. *Id.* at *13-14. The court disagreed, noting that § 1182(f) allows the President to "suspend the entry of all aliens" and the reticulated scheme in the Refugee Act did not limit that authority. *Id.* at *14-15. Plaintiffs' case here is even weaker. The same aliens can still be admitted as H-1B workers under the same criteria, so long as the petitions filed on their behalf include evidence of an additional payment. *See Chamber of Com. v. U.S. DHS*, 2025 U.S. Dist. LEXIS 265244 *22 (D.D.C. Dec. 23, 2025).

Plaintiffs focus (at 10-11) on the fees that can apply to H-1B petitions. Fundamentally, Plaintiffs' position is that because Congress provided some fees and requirements for H-1B, this implicitly precludes any further restrictions. But this would eviscerate § 1182(f), which the Supreme Court said "impose[s] entry restrictions in addition" to detailed admissibility rules. *Hawaii*, 585 U.S. at 684. To "expressly override" the INA, a Proclamation must displace a provision or conflict with an express limit. *Id.* Plaintiffs identify neither.

Regardless, none of Plaintiffs' identified fees are exclusive, nor do they prohibit other fees, which Congress knows how to do. *See, e.g.*, 8 U.S.C. § 1356(e)(3) (fee "shall not" be imposed). Section 1356(m) is permissive and governs only cost-recovery fees; it contains no prohibition on

5

other payments. Nor do other H-1B provisions foreclose additional payments, which recognize "any other fees authorized by law." 8 U.S.C. § 1184(c)(12). Plaintiffs also generally claim Congress stepped into the space of handling fraud and costs. But again, the Proclamation does not conflict with those provisions. Nor is it limited to employers who repeatedly committed fraud, it seeks to help Americans get important STEM and national security jobs. There is no conflict.

## V.    The Payment is Not an Unconstitutional Tax.

The payment requirement is not a tax. The Proclamation imposes a condition on entry, not a revenue-raising measure. *Chamber*, 2025 U.S. Dist. LEXIS 265244, at *54. Plaintiffs acknowledge (at 12) that taxes are meant to raise revenue and this restriction decidedly does not. While it is true taxes can have other aims, that does not transform a revenue reducing restriction into a tax. Plaintiffs also claim that the payment is not prohibitive because it is a flat rate (which is irrelevant) while in the same breath assert it effectively dismantles the program. *Id.* Neither is true. The payment is a restriction on entry intended to address abuse and help Americans, but the program remains. It is not a tax.

Plaintiffs next misstate Defendants' position on the other powers at issue. Even if the payment could implicate the taxing power, it also reflects other powers, namely foreign commerce and migration. Unlike the taxing power, the commerce power is regularly delegated with less clarity. *See Smith v. Turner*, 48 U.S. 283, 421 (1849); *Target Sportswear, Inc. v. U.S.*, 70 F.3d 604, 607 (Fed. Cir. 1995) (broad foreign commerce delegation to President). And unlike the taxing power which is core to Congress, authority over the admission of aliens is shared with the executive. *See Knauff*, 338 U.S. at 542.[1] Furthermore, the power to fully exclude aliens (which

---

[1] Plaintiffs briefly make a nonsensical argument that this authority is not implicated because H-1B is a non-immigrant visa. Resp. Br.11. The power at issue involves the admission and exclusion of aliens under the Constitution, which clearly includes H-1B recipients as it is the basis for the entire INA. The statutory label under the INA is irrelevant.

Plaintiffs do not contest § 1182(f) allows for) includes the power to set lesser restrictions, such as a payment. *See Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 141, 144, 148 (1982). Plaintiffs' repetitive (and wrong) mantra (at 12-23) that the payment is a tax fails to respond to these points.

Regardless, even if the payment was purely a tax, §§ 1182(f) and 1185(a)'s "sweeping" delegation to impose "any restrictions [the President] may deem to be appropriate" or "reasonable rules, [and] regulations" in the realm of "immigration" and "foreign affairs" clearly encompass the payment here. *Hawaii*, 585 U.S. at 684, 708. No special delegation is required. *See FCC v. Consumers' Rsch.*, 606 U.S. 656, 674 (2025). Plaintiffs' overreliance on *Learning Resources, Inc. v. Trump*, 146 S. Ct. 628 (2026) backfires. The majority held that "[t]he power to 'regulate . . . importation'" in IEEPA excluded a power to tax because "regulate[]" appears sixteen words away from "importation" and a broad construction of "regulate" would swallow the eight verbs in the remainder of the statute would render them "wasted ink." *Id.* at 642-43. By contrast, § 1182(f) contains no list of ways the President may "suspend" or "restrict" entry; rather it allows for "*any* restrictions he may deem to be appropriate." 8 U.S.C. § 1182(f) (emphasis added); *see also Rep. of Iraq v. Beaty*, 556 U.S. 848, 856 (2009) ("the word any" has "an expansive meaning").

Indeed, the Supreme Court distinguished IEEPA from § 232(b) at issue in *Federal Energy Admin. v. Algonquin SNG, Inc.*, 426 U.S. 548 (1976), which did permit tariffs. *Id.* at 645. The Supreme Court distinguished the delegation in § 232(b) as "sweeping" because it "authorizes the President not only to 'adjust . . . imports,' but [] to take such action . . . as he deems necessary' to adjust the imports of a good." *Id*. §§ 1182(f) and 1185(a) more closely mirror the language of the statute in *Algonquin* than IEEPA, as they empower the President to impose "any restrictions he may deem to be appropriate." 8 U.S.C. § 1182(f). This is why then Judge Ginsburg, when sitting on the D.C. Circuit, called the delegation "sweeping," *Abourezk v. Reagan*, 785 F.2d 1043, 1049

7

n.2 (D.C. Cir. 1986) (R.B. Ginsburg, J.), and the Supreme Court in *Hawaii* remarked that it was a "facially broad grant of power," 585 U.S. at 688.

Plaintiffs' appeal to the major questions doctrine also fails. That analysis focuses on the text and context compared to the power asserted. *See Biden v. Neb.*, 600 U.S. 477, 517-18 (2023) (Barrett, J., concurring). There is no mismatch here. In *Learning Resources*, the Supreme Court described the asserted authority as "the independent power to impose tariffs on imports from any country, of any product, at any rate, for any amount of time." 146 S. Ct. at 637. The Supreme Court contrasted that power with the tariffs permitted in *U.S. v. Yoshida Int'l, Inc.*, 526 F. 2d 560, 572 (CCPA 1975), which were "of limited amount, duration, and scope." *Id.* at 644. The Proclamation is likewise limited to a single $100,000 payment per alien on the entry of just certain H-1B aliens for 1 year. These limits partially stem from § 1182(f) itself, which applies only to the entry of aliens for a temporary period. Thus, the breadth of the delegation here is much broader while the power asserted is much narrower than in *Learning Resources*. Moreover, unlike *Learning Resources* there is no evidence that the impact is anywhere near $15 trillion. As evidence, Plaintiffs claim (at 15) that H-1B petitions went from 456,725 to only 85. That is misleading at best because the Proclamation does not apply to many petitions. Thousands of petitions have been submitted and the lottery cap was met, reflecting that tens of thousands of H-1B petitions may be filed and, if otherwise approvable, granted without the Proclamation payment.[2] As far as history goes, one cannot assume previous Presidents exercised their power "maximally" and previous proclamations cannot give us "a law trapped in amber," preventing all innovations to address new challenges. *U.S. v. Rahimi*, 602 U.S. 680, 739 (2024) (Barrett, J., concurring). While this exact restriction has

---

[2] FY 2027 H-1B Initial Registration Selection Process Completed, (Mar. 31, 2026), https://www.uscis.gov/newsroom/alerts/fy-2027-h-1b-initial-registration-selection-process-completed.

not been imposed, § 1182(f) has been used in numerous ways.

Finally, Plaintiffs argue that the Proclamation does not apply to a "class of aliens," something they did not raise in their opening brief and is thus waived. *See* Doc. No. 87 at 16. In any event, "any class of aliens" is broad and can include purpose of entry. *See Chamber*, 2025 WL 3719234, at *14–15 (rejecting this requirement and this argument). H-1B visas are defined by entry to perform work in a "specialty occupation" requiring "highly specialized knowledge." 8 U.S.C. § 1184(i). That shared purpose defines the class and they are restricted from entering absent a payment. Plaintiffs' real argument (buried in a footnote), is that the Proclamation improperly regulates domestic entities. That is wrong; it restricts the entry of aliens. And the fact that the Proclamation may tie in to domestic policy concerns does not distinguish it from ordinary admission determinations. *See Doe #1 v. Trump*, 984 F.3d 848, 870 (9th Cir. 2020), *vacated on denial of en banc reh'g*, 2 F.4th 1284 (9th Cir. 2021) (rejecting identical argument for entry ban on aliens that would burden the health system); *Chamber*, 2025 WL 3719234, at *17.

## VI.    Plaintiffs' Other APA Claims Fail.

In arguing that there is a legislative rule that can be challenged, Plaintiffs admit (at 17) that the only obligation being imposed is the payment from the Proclamation, not the agency guidance. That admission is fatal. A Proclamation is not subject to rulemaking. Nor do Plaintiffs offer a response to the lack of prejudice—comments could not have altered agencies bound to follow the Proclamation. *See Bradford*, 101 F.4th at 731; *Make The Rd. N.Y. v. Wolf*, 962 F.3d 612, 635 (D.C. Cir. 2020). They then footnote the exceptions to rulemaking, simply asserting that the foreign affairs exception does not apply to immigration. Resp. Br.17 n.14. However, their cited cases do not say that, and they have no response to the fact that "[t]he exclusion of aliens ... is inherent in the executive power to control the foreign affairs of the nation," *Knauff*, 338 U.S. at 542. Plaintiffs also fail (at 18) to engage with the fact that it can never be arbitrary and capricious for agencies to

9

implement a presidential proclamation. *See Chamber*, 2025 U.S. Dist. LEXIS 265244, *75-76;

*Orr*, 146 S. Ct. at 46 (2025); *Bradford*, 101 F.4th at 731.

## VII.    Plaintiffs Have Not Met the Requirements for Relief.

As explained in Defendants' opening brief, Plaintiffs cannot satisfy the requirements for

relief—and their opposition does nothing to cure those defects. Regardless, any relief must be

narrowly tailored. Plaintiffs have no response to the fact that many of their employers are

represented by AAU in *Chamber of Com.*, 2025 WL 3719234, at *1, creating the necessary privity

as to those entities for *res judicata*. Bizarrely, Plaintiffs cite (at 19) cases that decline to apply

preclusion to the government in enforcement actions based on previous suits between private

individuals. That has no relevance here where overlapping private plaintiffs are bringing identical

claims against the government. At a minimum, the overlapping members must be excluded from

relief.[3]

## CONCLUSION

For these reasons, Plaintiffs' motion for summary judgment should be denied, and

judgment should be entered in favor of Defendants.

---

[3] The Plaintiffs in *Global Nurse Force v. Trump*, 4:25-cv-08454-HSG (N.D. Cal.) have sought a Rule 23(b)(2) class of all employers raising the same challenges. Doc. No. 93-7, 93-8, 93-9, 93-10; Dkt. 76. If that class is granted, it will bind Plaintiffs here. *See Lemon v. Int'l Union of Operating Eng'rs, Loc. No. 139, AFL-CIO*, 216 F.3d 577, 580 (7th Cir. 2000). If that happens, this Court should stay the case. Plaintiffs did not respond to this issue.

**Brett A. Shumate**
Assistant Attorney General
Civil Division

**Drew C. Ensign**
Deputy Assistant Attorney General
Office of Immigration Litigation

**August Flentje**
Special Counsel for Immigration

**Tiberius Davis**
Counsel to the Assistant Attorney General

**Glenn Girdharry**
Acting Deputy Director

By: */s/ Jeffrey Alderette*
**Jeffrey Alderette**
Trial Attorney (D.C. No. 1738711)
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 860-9941
Jeffrey.Alderette@usdoj.gov
*Counsel for Defendants*

11