UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

State of California, et al.,

                  Plaintiffs,

    v.

Markwayne Mullin, et al.,

                  Defendants.

25-cv-13829
**DECLARATION OF CARA M. SELBY**

## <u>DECLARATION OF CARA M. SELBY</u>

I, Cara M. Selby, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that the following is true and correct:

1. I am employed by the U.S. Department of Homeland Security (DHS), U.S. Citizenship and Immigration Services (USCIS), as the Associate Director of the USCIS Service Center Operations directorate (SCOPS). My current duties include managing multiple Service Centers that are responsible for the adjudication of H-1B nonimmigrant visa petitions, including those subject to the $100,000 payment pursuant to the Presidential Proclamation 10973, *Restriction on Entry of Certain Nonimmigrant Workers*, signed on Sept. 19, 2025 ("Proclamation").

2. I am competent to make this declaration, and the facts in this declaration are within my personal knowledge, which includes information I have learned through my official duties and after reasonable inquiry.

1

3.  On September 19, 2025, President Trump signed the Proclamation, which added a $100,000 payment requirement to certain H-1B petitions.

4.  On June 8, 2026, this Court issued a vacatur of the implementation of the $100,000 payment requirement in the Proclamation by the U.S. State Department and DHS. *State of California, et al v. Mullin*, et al (D. Mass. Jun. 8, 2026).

5.  If the vacatur of the implementation of the $100,000 payment is not stayed, petitioning employers could file H-1B petitions that would have otherwise been subject to the Proclamation payment and, regardless of action requested or adjudicative decision, the petitioner would not have to submit the Proclamation payment and alien beneficiaries of such petitions, if approved, may be able to enter the country without making the payment.

6.  While the implementation of the Proclamation is halted, some employers may rush to file cap exempt H-1B petitions and have alien beneficiaries enter the United States. Similarly, some H-1B cap-subject petitioners filing petitions toward the 85,000 H-1B cap may decide to file H-1B cap petitions that request consulate notification rather than a change of status prior to the upcoming June 30 deadline.

7.  This will certainly increase the operational burden on USCIS if DHS prevails on appeal while these petitions are pending because USCIS would have to issue Requests for Evidence or Notices of Intent to Deny to collect the payment subsequently. Generally, these petitions must include proof of the $100,000 payment at the time the petition is filed or USCIS will issue a Request for Evidence or Notice of Intent to Deny requesting evidence the payment was made. Should DHS prevail, USCIS would need to issue such notices for all pending cases that requested consulate notification where  petitioners have not made the payment.

8. In addition, if DHS prevails on appeal, USCIS would seek to revoke the approval of petitions that would have otherwise been required to submit the $100,000 payment. The issuance of notices of intent to revoke, and subsequent revocation notices, would further increase the operational burden on USCIS.  Revoking petition approvals would be cumbersome, especially if the volume is high. Each case would need to be identified, routed to an officer, and reviewed by the officer to determine whether it is subject to the payment. The officer would also need to re-run security and background checks on the alien beneficiary. If the payment applied to the case, the officer would manually draft and issue an intent to revoke detailing the specifics of that case. USCIS would then wait for a response from the petitioner – the timeframe for which can be as long as 33 days. After response, an officer would then need to re-review the file including any response to the intent to revoke.  If the reasons for revocation are not overcome in the response, the officer would then manually draft and issue a revocation notice (or reaffirmation notice if eligibility was established). This drains our limited resources from working new filings, keeping up with premium processing requests, training new officers, and dealing with other operational demands.

9. Petitions seeking a change of status or extension of stay that would have otherwise been subject to the Proclamation payment if the status request will be denied would no longer have to submit the payment.  If those status requests are denied, but the petition is approved with consulate notification because eligibility was otherwise established, it could allow those beneficiaries to depart and be readmitted, thereby effectuating the petition approval and their H-1B status based on that petition approval, without having made the Proclamation payment. This would further increase the operational burden on USCIS if the appeal is successful and USCIS has to take action to collect the payment or revoke the petition approval.

10. Once a petition has been approved and the alien has been admitted as an H-1B nonimmigrant worker, it would be very hard to remove them from the country after the petition approval has been revoked. USCIS would likely face challenges in locating and properly serving the H-1B nonimmigrant with a Notice to Appear (NTA). Additionally, if the H-1B worker's spouse or dependent children accompanied the H-1B worker, and were admitted as H-4 nonimmigrants, the spouse and dependent children may also be subject to removal. USCIS must issue a separate decision to each of the alien beneficiaries on their forms as well as issue separate NTAs.

11. There can be a substantial delay between when the NTA is issued and when an appointment with the immigration court is scheduled. The timeframe can be as long as many months or even years. Having to place these individuals into removal proceedings rather than ensuring that the payment is provided in the first place would also place additional workload burden on immigration courts and delay in court dates would be exacerbated if a large volume of H-1B petitions that were approved were subsequently revoked for not making the $100,000 payment. Individuals would likely remain in the country for an extended period beyond when they are authorized. And because the aliens would have been lawfully admitted, procedures such as expedited removal would not apply. These aliens would thus have additional procedural protections and be able to raise claims such as asylum, CAT, or withholding of removal, all things that are unavailable to aliens abroad.

12. The actions USCIS would need to take to properly serve these aliens with NTAs to commence removal proceedings would be an additional operational burden on USCIS. The NTA process is not automated. These require manual review of the fact pattern of the case and drafting of the notice. The resources used to process the NTAs would need to be pulled

from other workloads, increasing backlogs, delaying other adjudications, and increasing risk to USCIS's ability to meet premium processing timelines, statutory caps, and other time-sensitive adjudications.

13. Additionally, certain H-1B beneficiaries may retain their cap-exempt status after their cap petition has been approved without the payment, and then, upon DHS prevailing in litigation, may have their petitions subsequently revoked for failure to pay the $100,000 payment. USCIS may only revoke a cap number if the cap petition is revoked with a finding of fraud or willful misrepresentation. These beneficiaries would gain a benefit (cap-exemption) solely because there was a temporary period of time where the $100,000 payment was not required.

14. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 11th day of June of 2026 in South Burlington, Vermont.

CARA M SELBY  Digitally signed by CARA M SELBY
Date: 2026.06.11 19:30:18 -04'00'

_____

Cara M. Selby
Associate Director
USCIS Service Center Operations

5